Filed 10/16/15; unmodified opn. attached

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| PAMELA BEHM,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CLEAR VIEW TECHNOLOGIES,<br><br>    Defendant and Appellant. | H040032<br>(Santa Clara County<br>Super. Ct. No. 1-11-CV206163)<br><br>ORDER MODIFYING OPINION<br>NO CHANGE IN JUDGMENT |

BY THE COURT:

It is ordered that the opinion filed herein on October 8, 2015, be modified in the following particulars:

On page 3, the first full paragraph, the seventh sentence is modified to read: "CVT's response consisted primarily of objections and included CVT's assertion that the interrogatory was now moot, because Behm had failed to serve all the defendants within 60 days of filing her complaint."

On page 7, the second full paragraph, the fourth and fifth sentences starting with "Under section 425.115, subdivision (b) .…" are deleted.

There is no change in judgment.


Dated:_____

                                                     Walsh, J.[*]

_____    _____

        Rushing, P.J.                              Elia, J.

_____

[*] Judge of the Santa Clara County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| PAMELA BEHM,<br><br>     Plaintiff and Appellant,<br><br>     v.<br><br>CLEAR VIEW TECHNOLOGIES,<br><br>     Defendant and Appellant. | H040032<br>(Santa Clara County<br> Super. Ct. No. 1-11-CV206163) |

Pamela Behm asserts that she was persuaded by the false representations of officers and directors of Clear View Technologies (CVT) to invest approximately $200,000 in the company. CVT claimed to be developing BarMaster, a product that would measure pours of alcohol with such precision that it would save large sums of money for purveyors of adult beverages and reap great profits for CVT. When CVT had financial difficulties and Behm discovered the product did not have the viability she had been assured, she filed a lawsuit against CVT and its officers and directors seeking compensatory damages "in a sum exceeding $200,000."

During the course of the underlying litigation, CVT failed to produce discovery and to comply with court orders. Behm obtained terminating sanctions against CVT, and a default was entered against the company. Behm procured a default judgment for $1,264,668.83, including $924,000 in punitive damages. Thereafter, CVT moved to vacate the default and the default judgment, arguing that it did not have sufficient notice of the amount of punitive damages under Code of Civil Procedure section 425.115,

subdivision (f)[1] and that it was entitled to mandatory relief from default under section 473, subdivision (b) because the default was incurred due to the mistake, inadvertence, surprise, or neglect of its prior attorney, Chang Yi.  The trial court granted the motion in part, vacating the default judgment after finding the notice of damages was insufficient.  However, it denied CVT's request to be relieved from the underlying default.  Both Behm and CVT have appealed the court's order.

For the reasons set forth below, we affirm.  Due process requires that when a plaintiff moves for discovery terminating sanctions and seeks punitive damages, a statement under section 425.115, subdivision (f) must be served a reasonable time before obtaining those sanctions.  Notice must be sufficient to afford a defendant the opportunity to fairly appraise the full amount of damages sought by the time he or she needs to respond and oppose the motion.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 28, 2011, Behm filed a complaint against CVT alleging she was defrauded when she invested $200,000 in the company.[2]  The complaint alleged a total of seven causes of action, some against CVT only, and the others against CVT and several other individual defendants consisting of officers and directors of CVT.  These defendants included Paul Mula Sr. and Paul Mula II.  Though Behm did not request a specific amount of damages for emotional distress, lost wages, or punitive damages, she did request "compensatory damages of no less than $200,000, plus interest, or in such additional amount as is proven at trial."

According to Behm, she successfully served CVT and Mula II with her complaint.  However, she was unsuccessful in her attempts to serve some of the other named

---

[1] Unspecified statutory references are to the Code of Civil Procedure.
[2] The complaint also named several of CVT's officers and employees who are not a party to this appeal.

2

defendants, because CVT's offices were always closed when service attempts were made. In early September 2011, Behm asked Yi, who was representing CVT and the individual defendants, to accept service on behalf of CVT's employees and officers. Yi refused Behm's request. Subsequently, Behm served a special interrogatory on CVT asking it to produce the last known home addresses of each of the individual defendants, excluding Mula II. Behm also propounded on CVT a set of inspection demands, requesting some of CVT's business records.

CVT's response to the special interrogatory was due October 31, 2011. On that day, Yi requested an extension to finalize CVT's response by November 4, 2011. Behm agreed. By November 7, 2011, Behm had yet to receive a response, so she e-mailed Yi. Yi replied and explained that many of CVT's officers were not located in Santa Clara, so he had been unable to finalize discovery. That same day, Yi served CVT's response via mail. CVT's reponse consisted primarily of objections and included CVT assertion that the interrogatory was now moot, because Behm had failed to serve all the defendants within 60 days of filing her complaint. The response did not contain usable information about the defendants' addresses.

On November 14, 2011, Behm filed an ex parte application to extend time to serve her complaint on the defendants that had yet to be served. The court granted Behm's application and ordered her to complete service as soon as possible.

Afterwards, Behm filed a motion to compel a response to her special interrogatory and her request for inspection of CVT's records. On January 30, 2012, CVT filed an opposition where it again argued that it need not provide the information because the time to serve the named defendants had expired. On February 16, 2012, the court granted Behm's motion to compel and ordered CVT to serve code-compliant verified responses to Behm's special interrogatory and to produce all documents responsive to Behm's

inspection request by an extended deadline. The court further ordered CVT to pay monetary sanctions.

CVT failed to produce any documents responsive to Behm's request by the deadline. Subsequently, on April 2, 2012, Behm informed CVT that she would be seeking monetary and nonmonetary sanctions against the company for its discovery violations. Behm gave CVT a few weeks to comply with the court's orders, which it failed to do.

On April 27, 2012, Behm filed a motion for terminating sanctions. CVT did not oppose the motion.

Several weeks later and just prior to the hearing on Behm's motion set for June 8, 2012, a tentative ruling was issued by the court granting the motion for terminating sanctions, which order automatically became the order of the court on June 8, 2012, pursuant to California Rules of Court, rule 3.1308(a) and local court rule.[3] In that ruling, the court indicated it would strike CVT's answer and would enter a default against the company.

On June 11, 2012, three days after the court adopted the ruling granting terminating sanctions, Behm served CVT a notice pursuant to section 425.115 reserving the right to seek $1 million in punitive damages.

On June 15, 2012, the court signed a written order that echoed the ruling adopted on June 8, 2012, granting Behm's motion for terminating sanctions. The order was filed on June 25, 2012.

---

[3] Santa Clara County has a local rule that provides that a "tentative ruling will automatically become the order of the Court on the scheduled hearing date if . . . *if the contesting party fails to timely notice an objection to the other side and the Court*." (Super. Ct. Santa Clara County, Local Rules, civ. rule 8E.)

On July 1, 2012, Yi filed a motion for reconsideration on behalf of CVT. The court denied the motion.

On March 5, 2013, Behm applied for a default judgment against CVT, requesting $1,264,668.83 in damages, which comprised of $200,000 in compensatory damages, $108,000 in emotional distress damages and lost wages, $32,487.67 in prejudgment interest, $924,000 in punitive damages, and $181.16 in court fees. Punitive damages were calculated as three times the total compensatory damages including the emotional distress damages sought by Behm. A few weeks later, the trial court granted Behm's application for a default judgment and awarded her all of the requested damages.

On June 10, 2013, CVT brought a motion to set aside the default and the default judgment pursuant to section 473, subdivision (b). At that point, CVT was no longer represented by Yi. The motion asserted that CVT was entitled to relief from default, because the default was solely the result of Yi's negligence and failures.[4] CVT also argued that the award of damages to Behm violated its due process rights, because it was not adequately informed of the amount of compensatory and punitive damages that Behm would seek.

After a hearing, the court granted CVT's motion in part, vacating the default judgment on the basis that the award of compensatory and punitive damages in excess of the amount pleaded in the complaint violated CVT's due process rights. However, the court left the default intact after finding Yi's affidavit of fault lacked credibility and declared that Behm was authorized to apply for another default judgment for the amount

---

[4] Earlier, default was also entered against Mula Sr. and Mula II. On March 25, 2013, Mula II successfully set aside his default after retaining new counsel based on a separate declaration of fault signed by Yi. Mula Sr. has also filed a separate motion for relief from default based on another declaration of fault prepared by Yi. The default judgments entered against Mula Sr. and Mula II are not a part of this appeal.

of compensatory damages alleged in the complaint.  Both Behm and CVT have appealed from this order.

# DISCUSSION

1. *Behm's Appeal*

On appeal, Behm argues that the court erred in vacating the default judgment and the award of punitive damages, because the punitive damages notice served on CVT was timely and comported with due process.

   a. **Standard of Review and Legal Framework**

"Our standard of review is well articulated by the California Supreme Court in *Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233:  'A motion seeking [relief from default] lies within the sound discretion of the trial court, and the trial court's decision will not be overturned absent an abuse of discretion.  [Citations.]  However, the trial court's discretion is not unlimited and must be " 'exercised in conformity with the spirit of the law and in a manner to subserve and to impede or defeat the ends of substantial justice.' "  [Citations.] [¶] Section 473 is often applied liberally where the party in default moves promptly to seek relief, and the party opposing the motion will not suffer prejudice if relief is granted.  [Citations.]  In such situations "very slight evidence will be required to justify a court in setting aside the default."  [Citations.] [¶] Moreover, because the law strongly favors trial and disposition on the merits, any doubts in applying section 473 must be resolved in favor of the party seeking relief from default [citations].  Therefore, a trial court order denying relief is scrutinized more carefully than an order permitting trial on the merits.' "  (*McCormick v. Board of Supervisors* (1988) 198 Cal.App.3d 352, 359-360.)

   b. **Notice of Punitive Damages Under Section 425.115, Subdivision (f)**

Due process requires that defendants be provided with sufficient notice of the relief a plaintiff seeks prior to entry of a default.  (*Van Sickle v. Gilbert* (2011) 196

6

Cal.App.4th 1495, 1520-1521 (*Van Sickle*).) " 'The logic underlying this principle is simple: a defendant who has been served with a lawsuit has the right, in view of the relief which the complainant is seeking from him, to decide not to appear and defend. However, a defendant is not in a position to make such a decision if he or she has not been given full notice.' " (*Id.* at p. 1520.)

"To effectuate this due process principle, California law provides that where a plaintiff seeks to recover money or damages, the amount sought generally must be stated in the complaint. (§ 425.10, subd. (a)(2).)" (*Van Sickle*, *supra*, 196 Cal.App.4th at p. 1520.) However, there are exceptions to this general rule. Pertinent here is the exception provided in Civil Code section 3295, subdivision (e), which states that "[n]o claim for exemplary [i.e., punitive] damages shall state an amount or amounts" to be sought.

Nonetheless, the Legislature has ensured that the due process requirement satisfied when a complainant seeks punitive damages. Under section 425.115, subdivision (b), a complainant seeking punitive damages should serve a statement notifying the defendant of the amount of damages sought. Section 425.115, subdivision (f) provides that "[t]he plaintiff shall serve the statement upon the defendant pursuant to this section before a default may be taken, if the motion for default judgment includes a request for punitive damagesof notice is still satisfied when a complainant seeks punitive damages. Under section 425.115, subdivision (b), a complainant seeking punitive damages should serve a statement notifying the defendant of the amount of damages sought. Section 425.115, subdivision (f) provides that "[t]he plaintiff shall serve the statement upon the defendant pursuant to this section before a default may be taken, if the motion for default judgment includes a request for punitive damages."

As a general rule, "[t]he relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint, in the statement required by Section 425.11, or in the statement provided for by Section 425.115 . . . ." (§ 580, subd. (a).) Therefore, a

7

default judgment entered with a damages award higher than the amount either enumerated in the complaint or stated in a notice made pursuant to section 425.115 is void. (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 826 (*Greenup*).) "This rule applies to defaults entered as a terminating sanction for misuse of the discovery process . . . ." (*Simke, Chodos, Silberfeld & Anteau, Inc. v. Athans* (2011) 195 Cal.App.4th 1275, 1286.)

Notably, sections 580, 425.11, and 425.115 do not specify *when* a statement of punitive damages must be served on a defendant prior to a default in order for due process to be satisfied. (*Matera v. McLeod* (2006) 145 Cal.App.4th 44, 61 (*Matera*).) Therefore, Behm argues that there is no timing requirement and service of a notice is proper at any time before entry of default. Behm insists that the trial court improperly read into the statute a due process requirement that simply does not exist.

We disagree. Both the Fourteenth Amendment of the Federal Constitution and the California Constitution contain due process guarantees. Section 425.115's failure to specifically state a due process requirement does not render a notice of punitive damages outside the scope of the federal and state constitutional assurances of due process of law. Quite the contrary, " '[i]t is fundamental to the concept of due process that a defendant be given notice of the existence of a lawsuit and notice of the specific relief which is sought in the complaint served upon him.' " (*Van Sickle, supra*, 196 Cal.App.4th at p. 1520.) This includes a notice of the punitive damages sought.

At issue is how much notice is required. "The governing standard for purposes of due process was stated in *Schwab v. Rondel Homes, Inc.* (1991) 53 Cal.3d 428, 435, albeit in dictum: 'A defendant is entitled to actual notice of the liability to which he or she may be subjected, *a reasonable period of time* before default may be entered.' " (*Matera, supra*, 145 Cal.App.4th at p. 61, italics added.)

Several cases have discussed what constitutes a reasonable period of time. In *Matera*, two defendants appealed following the entry of a default judgment against them

8

and the denial of their motion for relief from default under section 473, subdivision (b). (*Matera*, *supra*, 145 Cal.App.4th at p. 49.)  In part, the defendants argued that the plaintiffs failed to serve the statement of punitive damages within a reasonable period of time before the default was taken, because they were served with the statement a mere two days before the court struck the defendants' answer and entered their defaults.  (*Id*. at p. 62.)  The *Matera* court agreed, concluding that "two days before the entry of default was not a reasonable period of time to apprise the defendants of their substantial potential liability for purposes of due process."  (*Ibid*.)

In *Electronic Funds Solutions*, *LLC v. Murphy* (2005) 134 Cal.App.4th 1161 (*Electronic Funds*), the plaintiffs filed a motion for terminating sanctions at the same time they served the defendants with a statement of punitive damages.  (*Id*. at p. 1172.)  The court determined that the notice was timely, rejecting the defendants' claim that the notice violated their due process rights because it was not given until they made the decision to thwart the discovery process.  (*Id*. at p. 1178.)

In *Electronic Funds*, the court stated that "[b]ecause service occurred before the entry of default, the notice of punitive damages was timely."  (*Electronic Funds*, *supra*, 134 Cal.App.4th at p. 1178.)  Behm seizes upon this sentence, asserting that *Electronic Funds* therefore holds that service of a statement of punitive damages *at any time* before a default was entered satisfies due process.

We disagree with Behm's interpretation of *Electronic Funds*.  *Electronic Funds* held that a service of a notice of punitive damages made concurrently with a motion for terminating sanctions comports with due process.  Furthermore, it rejected the argument that notice must be given *before* a litigant decides to destroy evidence or evade the discovery process.  To the extent the sentence quoted by Behm from the *Electronic Funds* decision asserts that service *at any time* prior to the entry of default is proper, this statement is merely dicta.  "An appellate decision is not authority for everything said in

9

the court's opinion but only 'for the points actually involved and actually decided.' "
(*Santisas v. Goodin* (1998) 17 Cal.4th 599, 620.)

Contrary to Behm's claims, we are left with two guideposts to assist in our determination of whether Behm's punitive damages notice was timely served. In *Matera*, the court concluded that service of the notice two days prior to the court's entry of a default judgment did not provide sufficient notice. In *Electronic Funds*, serving a notice presumably at least 16 days prior to the hearing on the motion requesting terminating sanction was sufficient.[5]

As an aside, the parties dispute the exact date the default was taken. Behm claims that it is clear the default was taken on the date the signed order by the court was filed, which would be on June 25, 2012. CVT argues the default was effectively taken when the court adopted its tentative ruling almost two weeks before on June 8, 2012. Regardless of which date is used (June 8, 2012, or June 25, 2012), Behm's notice of damages falls squarely between the timelines considered by *Matera* and *Electronic Funds*. Behm served her notice of punitive damages *after* the court issued and adopted a tentative ruling granting the motion, but more than two days *before* the order entering the default was filed.

We agree with *Electronic Funds* that a notice of punitive damages filed concurrently with a motion for terminating sanctions provides parties sufficient notice. A concurrent notice of punitive damages would fully apprise parties of the potential liability they may face should they choose not to oppose the motion and terminating sanctions are

---

[5] Section 1005 provides in pertinent part that "[u]nless otherwise ordered or specifically provided by law, all moving and supporting papers shall be served and filed at least 16 court days before the hearing." (§ 1005, subd. (b).) Therefore, since the notice of damages in *Electronic Funds* was served at the same time as the motion for terminating sanctions, the notice was presumably served at least 16 days prior to the date of the hearing.

ordered.  Here, the timing of Behm's notice is more analogous to the scenario set forth in *Matera*, because she filed it *after* her motion for terminating sanctions and after the court issued and adopted its tentative order.  "The striking of a defendant's answer as a terminating sanction leads inexorably to the entry of default."  (*Matera*, *supra*, 145 Cal.App.4th at p. 62.)  To meaningfully oppose a motion for terminating sanctions, a defendant must file and serve a written response at least nine days before the hearing date.  (§ 1005, subd. (b).)  "[D]ue process requires notice to defendants, whether they default by inaction or by wilful obstruction, of the potential consequences of a refusal to pursue their defense."  (*Greenup*, *supra*, 42 Cal.3d at p. 829.)  By not filing a statement of punitive damages until *after* the hearing on the order terminating sanctions (and the court adopted its tentative ruling), Behm, like the plaintiffs in *Matera*, effectively deprived CVT of notice of the full potential consequences of foregoing its last chance to change its course of noncompliance and nonopposition, demonstrating to the court that it will take part in the litigation process.  Behm failed to give CVT sufficient notice of its potential liability.

Behm argues that *Electronic Funds* holds that a defendant does not have a due process right to receive notice of punitive damages prior to making any discovery violations.  We agree with the reasoning set forth in *Electronic Funds* that to be sufficient a notice need not be received before a party commits discovery violations.  However, Behm's reliance on this principle is misplaced.  Here, CVT does not claim that due process was violated because it did not receive the punitive damages notice prior to it committing sanctionable actions.  Rather, CVT's claim is that the timing of the notice deprived it of the opportunity to fairly appraise the amount of damages sought by Behm prior to the time it needed to respond and oppose the motion for terminating sanctions.

Behm insists that this court should deviate from *Matera*, because *Matera* did not recognize the distinction between notice requirements for compensatory damages and for

11

punitive damages, and it erroneously relied on cases that were decided prior to the enactment of section 425.115. We disagree with Behm that *Matera* is inapplicable or should be reconsidered and we agree with *Matera*'s analysis that reasonable notice must be given of *all* damages, including punitive damages, prior to entry of a default.[6]

Lastly, Behm argues that earlier service of a notice under section 425.115, subdivision (f) would have served no due process function. She cites section 425.115, subdivision (c), which states that "[i]f the plaintiff seeks punitive damages pursuant to Section 3294 of the Civil Code, and if the defendant appears in the action, the plaintiff shall not be limited to the amount set forth in the statement served on the defendant pursuant to this section." Therefore, she claims that she could have served a notice to CVT that she sought $1 in punitive damages, but could have later sought millions of dollars in damages after the court granted the motion for terminating sanctions. Whether this wily tactic would be successful under the law is an issue that is not before us. Behm's argument ignores the fact section 425.115, subdivision (f) unequivocally requires a notice be served, regardless of the amount.

Accordingly, we do not find the court erred when it vacated the default judgment, because the statement of damages was not served within a reasonable period of time before the default was taken.

---

[6] In her combined reply brief and cross-respondent's brief, Behm claims we should not follow *Matera* because the appellate court violated the doctrine of constitutional avoidance by reaching the due process issue. She opines that the damages issue presented there could have been decided on nonconstitutional grounds. (*Sanchez v. City of Modesto* (2006) 145 Cal.App.4th 660, 671 ["[p]rinciples of judicial self-restraint . . . require us to avoid deciding a case on constitutional grounds unless absolutely necessary; nonconstitutional grounds must be relied on if they are available."].) Regardless of whether the *Matera* court could have avoided the constitutional question raised in that case, we are not necessarily bound by its decision. However, we find its reasoning persuasive and applicable to this case.

c. **Compensatory Damages**

CVT argues that, as a separate and individual cause for reversal of the default judgment, Behm also failed to provide it with sufficient notice of the compensatory damages. Accordingly, CVT asserts that even if we were to find reasonable notice of punitive damages was given, the default judgment must be vacated.[7]

Under section 580, subdivision (a), a default judgment "cannot exceed that which [the plaintiff] shall have demanded in his complaint." "[A] default judgment greater than the amount specifically demanded is void as beyond the court's jurisdiction." (*Greenup*, *supra*, 42 Cal.3d at p. 826.) Courts have applied this principle even to those prayers for relief requesting damages " 'in excess' " of a specific amount, as Behm did here. (*Becker v. S.P.V. Construction Co*. (1980) 27 Cal.3d 489, 492.) The rationale is that this type of prayer for relief cannot give a defendant the required notice of the damages sought. (*Id*. at p. 494.)

Here, although Behm sought compensatory damages "in a sum exceeding $200,000," she did not request additional damages to compensate her for emotional distress or for lost wages. As a result, the default judgment's award of $308,000 in compensatory damages was improper. And, the court's decision to vacate the default judgment was, therefore, also appropriate for this separate and independent reason.

2. *CVT's Cross-appeal*

CVT has cross-appealed from the same order, arguing that the court erred in vacating only the default judgment when it should have vacated both the default and the default judgment. CVT further claims that the default should have been set aside

---

[7] This issue was first raised in CVT's combined respondent's brief and cross-appellant's opening brief. Behm did not address this argument in her combined reply brief and cross-respondent's brief. Neither did CVT raise this issue again in its cross-appellant's reply brief. However, since CVT argues this claim, we address it here.

13

entirely, because the failures of CVT to comply with Behm's discovery requests solely resulted from the negligence of its former attorney, Yi. We address the latter claim first.

a. **Mandatory Relief from Default**

CVT claims the trial court erred when it did not grant it mandatory relief from default based on the affidavit of fault submitted by Yi.

As we articulated in the previous section of our opinion, the standard of review from the court's grant or denial of a motion for relief from default is well-settled. " 'A motion seeking [relief from default] lies within the sound discretion of the trial court, and the trial court's decision will not be overturned absent an abuse of discretion.' " (*McCormick v. Board of Supervisors*, *supra*, 198 Cal.App.3d at p. 359.)

Section 473, subdivision (b) states in pertinent part that "[n]otwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, *unless* the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (Italics added.)

"In considering whether the trial court properly denied relief under section 473[,] [subdivision] (b), the first question is the sufficiency of defendants' showing of attorney fault, if believed, to trigger the mandatory relief provisions of that statute. Since this determination depends on the application of legal principles to a set of facts that is, for this purpose, undisputed, it presents a pure question of law as to which we are in no respect bound by, or obliged to defer to, the trial court's express or implied determination." (*Standard Microsystems Corp. v. Winbond Electronics Corp.* (2009) 179

14

Cal.App.4th 868, 896, overruled on a different point in *Even Zohar Construction &*
*Remodeling*, *Inc*. *v*. *Bellaire Townhouses*, *LLC* (2015) 61 Cal.4th 830.) An affidavit of
fault need not show that the attorney's mistake, inadvertence, surprise, or neglect was
excusable. (*Cisneros v*. *Vueve* (1995) 37 Cal.App.4th 906, 909.)

"In certain situations, section 473 mandates relief on the basis of an attorney's
affidavit '*unless* the court finds that the default or dismissal was not in fact caused by the
attorney's mistake, inadvertence, surprise, or neglect.' The statute clearly involves an
assessment of credibility by the trial court." (*Johnson v*. *Pratt & Whitney Canada*, *Inc*.
(1994) 28 Cal.App.4th 613, 622 (*Johnson*); *Cowan v*. *Krayzman* (2011) 196 Cal.App.4th
907, 915; but see *Cisneros v*. *Vueve*, *supra*, 37 Cal.App.4th at p. 912 [concluding that the
" 'unless' " clause of § 473, subd. (b) "is not a credibility testing device, it is a causation
testing device. The statute mandates relief 'unless the court finds that the default . . . was
not *in fact caused* by the attorney's mistake, inadvertence' etc."].)

We defer to the trial court's determination of credibility and do not reweigh
evidence or reassess the credibility of witnesses. (*Johnson*, *supra*, 28 Cal.App.4th at p.
622.) If the evidence gives rise to reasonable conflicting inferences, one of which
supports the trial court's determination, we will affirm the court's finding on appeal. (*Id*.
at p. 623.)

Here, the trial court discounted Yi's affidavit of fault as lacking credibility. This
determination is supported by the record. The court reasonably inferred a lack of
credibility based on the contradictions and discrepancies between Yi's affidavit and his
earlier representations to the court. For example, Yi's affidavit of fault asserted that he
was unable to complete the response to Behm's special interrogatory, with no mention of
any delay resulting from CVT's staff. That affidavit contradicts Yi's earlier
representations to the court and to Behm, when he claimed he had trouble fulfilling the
discovery request because of his clients' lack of cooperation. The affidavit also

15

contradicts a statement in Yi's motion for reconsideration of the order granting terminating sanctions, where Yi claimed that he was unable to complete the interrogatory because he had difficulty contacting the various defendants and had trouble accessing their business user accounts and e-mails.

Yi's affidavit further stated that he was unable to comply with the court's order that he produce documents pursuant to Behm's motion to compel out of his own mistake, inadvertence, surprise and neglect. He also asserted he failed to submit evidence that CVT's financial difficulties precluded CVT from producing the documents requested. In his earlier motion for reconsideration, however, Yi had provided different excuses for the failure to comply, never mentioning any claim of his own "mistake, inadvertence, surprise, or neglect." In that motion for reconsideration, Yi asserted that he was not informed of CVT's dramatically reduced staffing until May 2012, and that, by that time, there was no staff left to produce any discovery; but, that was long after the court had granted the motion to compel and the deadlines to produce the discovery had passed.

In sum, most of Yi's prior statements attributed the delay in producing the discovery request to his clients, CVT and the other named defendants in the suit. Yi forfeited his credibility when, in his subsequent affidavit, he attempted "to change the facts and blame himself." (*Todd v*. *Thrifty Corp*. (1995) 34 Cal.App.4th 986, 992.)

Based on these inconsistencies, we cannot find that the court erred in finding Yi's affidavit to be incredible, therefore denying mandatory relief under section 473, subdivision (b).[8]

---

[8] We note that in CVT's motion to vacate the default and the default judgment, CVT asserted that Yi had submitted a separate affidavit of fault in support of vacating Mula Sr.'s default. However, Yi's affidavit of fault submitted in support of vacating Mula Sr.'s default is factually different than the affidavit he submitted in support of vacating CVT's default. Therefore, it has no bearing on the case before us. Furthermore, CVT's motion indicated that default had already been set aside for Mula II based on (continued)

16

b. **Proper Remedy**

We conclude that the court did not err when it vacated the default judgment, because the punitive damages award was void. We further find the court did not err in denying mandatory relief under section 473, subdivision (b), because there was support for the court's determination that Yi's affidavit of fault was not credible. Under this scenario, CVT argues that the proper remedy is to order the trial court to vacate the underlying default in addition to the default judgment, because the notice statutes regarding damages are aimed at the entry of a default.

CVT relies on *Van Sickle*, *supra*, 196 Cal.App.4th 1495. The court in *Van Sickle* contemplated what the proper remedy was in an action where the plaintiff failed to notify the defendant of the damages she sought. (*Id*. at pp. 1528-1529.) The *Van Sickle* plaintiff did not include a prayer for relief in her complaint, nor did she serve the defendant with a statement of damages prior to the taking of a default. (*Id*. at p. 1523.) Therefore, the appellate court concluded that it was appropriate to reverse the default judgment and to set aside the default. (*Id*. at p. 1529.) In so concluding, the court noted that case law has recognized it may be possible to simply modify a default judgment to a lesser amount as warranted in the complaint. (*Ibid*.) However, the better approach, considering there was no amount specified in the plaintiff's complaint, was to vacate the underlying default and allow the plaintiff to amend the complaint and serve the amended complaint on the defendant. (*Ibid*.)

*Van Sickle* is distinguishable. Here, Behm already included in her prayer for relief a request for $200,000 in compensatory damages. Therefore, it was not improper for the court to reverse only the default judgment. There is no need for Behm to amend her

another affidavit of fault submitted by Yi. However, the court did not set aside default based on a finding that Yi's affidavit of fault was credible. Rather, in that situation the court set aside the default based on Yi's affidavit based on the parties' stipulation

17

complaint and re-serve the amended complaint on CVT and the other named defendants. Unlike the plaintiff in *Van Sickle*, Behm's complaint was not deficient for failing to specify an amount of compensatory damages sought.

"Vacating the default judgment has no necessary effect on the underlying default and simply returns the defendant to the default status *quo ante*. [Citation.] Ordinarily when a judgment is vacated on the ground the damages awarded exceeded those pled, the appropriate action is to modify the judgment to the maximum amount warranted by the complaint." (*Ostling v. Loring* (1994) 27 Cal.App.4th 1731, 1743.) This general rule was acknowledged in *Electronic Funds*. However, the *Electronic Funds* court determined that under the specific circumstances of their case, the better course of action was to vacate the award in its entirety, because the trial court had applied an incorrect measure of damages. (*Electronic Funds*, *supra*, 134 Cal.App.4th at p. 1177.) Further, "[i]n the interest of fairness" the *Electronic Funds* court gave the plaintiffs the opportunity to amend their complaint to state the full amount of damages sought, because the plaintiffs had obtained the default judgment before the publication of an appellate decision holding that a notice of compensatory damages in excess of those alleged in the complaint under section 425.11 was not a substitute for an amended complaint except in personal injury or wrongful death cases. (*Ibid*.) Here, the trial court did not utilize an incorrect measure of damages and there has not been a recent decision clarifying the sufficiency of a notice of damages. Rather, like *Ostling*, the damages awarded simply exceeded the amount pleaded in the complaint.

In *Julius Schifaugh IV Consulting Services*, *Inc. v. Avaris Capital*, *Inc.* (2008) 164 Cal.App.4th 1393, the appellate court held that a plaintiff whose default judgment has been vacated because the relief granted exceeds that which was demanded in the complaint *may* be given the option of "accepting a reduced judgment or amending the complaint and putting the entire matter back at issue." (*Id*. at p. 1397.) "But if the

18

plaintiff chooses the latter, the court should vacate the default, ' "entitling defendants to either attack the pleadings, or answer the amended complaint." ' " (*Rodriguez v. Cho* (2015) 236 Cal.App.4th 742, 755.)

Here, the trial court opted *not* to give Behm a choice between accepting a reduced judgment or amending the complaint. Instead, it authorized Behm to apply for a new default judgment against CVT for compensatory damages to the extent alleged in the complaint. Essentially, the trial court's action below produces the same result as if it had modified the default judgment by striking the excess amount of damages. Such a decision is within the court's discretion, and we find no error with it.

## DISPOSITION

The trial court's order vacating the default judgment and denying Clear View Technologies' motion for relief from default is affirmed. Each party is to bear their own costs on appeal.

19

                                                    _____
                                                              Walsh, J.[*]


WE CONCUR:



_____
        Rushing, P.J.




_____
        Elia, J.




Behm v. Clear View Technologies
H040032

_____

    [*] Judge of the Santa Clara County Superior Court assigned by the Chief Justice
pursuant to article VI, section 6 of the California Constitution.

| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 1-11-CV206163 |
|---|---|
| Trial Judge: | Hon. Mark Pierce |
| Counsel for Plaintiff/Appellant:<br>Pamela Behn | Grellas Shah<br>George Grellas<br>Dhaivat H. Shah<br>David I. Siegel |
| Counsel for Defendant/Appellant:<br>Clear View Technologies | Ropers, Majeski, Kohn & Bentley<br>Michael J. Ioannou<br>J. Mark Thacker<br>Terry Anastassiou |

Behm v. Clear View Technologies
H040032