Filed 5/19/25  Powell v. Belden CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JOHN POWELL, JR., et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> T. SCOTT BELDEN et al., <br><br> Defendants and Appellants. | F087583 <br><br> (Super. Ct. No. BCV-23-102041-TSC) <br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Thomas S. Clark, Judge.

Kaufman Dolowich, Andrew J. Waxler and Jennifer E. Newcomb, for Defendants and Appellants.

The Baker Firm, Kenneth Eric Baker, for Plaintiffs and Respondents.

-ooOoo-

## INTRODUCTION

Plaintiffs and respondents John Powell, Jr., and Engineered Well Service International, LLC, filed a civil lawsuit against defendants and appellants T. Scott Belden and Belden Blaine Raytis, LLP.  Plaintiffs allege, *inter alia*, that defendants breached their fiduciary duties and committed legal malpractice by using confidential information obtained during their prior representation of plaintiffs to gain an advantage in various lawsuits in which defendants represented an adverse party.  Defendants filed a special motion to strike all five causes of action alleged in the complaint under the anti-SLAPP statute (Code Civ. Proc.,[1] § 425.16), asserting that they never represented plaintiffs and that the claims therein arise from petitioning activity protected by the statute.  We reverse the trial court's ruling on count three but affirm as to all other counts.

## STATEMENT OF FACTS

### *Powell and Sturgeon's Business Relationship*

John Powell, Jr., and Paul Sturgeon were business partners in three entities, all of which provided services in the oilfield industry:  Engineered Well Service, LLC (EWS Texas), Engineered Well Service International, Inc. (EWS California), and Sturgeon Services International, Inc. (SSI).  As relevant here, Powell served as the chief executive officer of all three companies at various points, and prior to 2015, he was a majority owner of EWS Texas and EWS California.  Sturgeon served as the president of SSI, and he was a shareholder of EWS California and EWS Texas.

In 2010, Powell claimed that he was introduced to defendants as a future contact for SSI.

In 2011, Powell alleged that defendants represented him in his divorce.[2]

---

[1] All further undefined statutory citations are to the Code of Civil Procedure unless otherwise indicated.

[2] Defendants allege that Powell was represented by a partner at the law firm of Klein DeNatale Goldner, LLP, and although Belden worked as an attorney for that firm,

In 2013, Powell retained defendants to represent SSI in an employment lawsuit.

In 2015, a dispute arose between Powell and Sturgeon regarding the ownership and management of the entities. Sturgeon asked defendants to draft an agreement in which the two parties would divide ownership of the companies and discontinue their working relationship. During the negotiation of this agreement (the mutual agreement), defendants represented Sturgeon. Powell was represented by a third party.

### Powell Sues over the Mutual Agreement

On January 12, 2016, Powell sued Sturgeon, SSI, and EWS California (collectively, the Sturgeon parties). Powell claimed that Sturgeon had altered the mutual agreement without informing him of relevant changes. Powell further asserted that he had been pressured into signing the agreement before his attorney had the opportunity to review those changes. Defendants acted as legal counsel for the Sturgeon parties during the litigation.

On March 9, 2016, the Sturgeon parties filed a cross-complaint against Powell, alleging various breach of duties through Powell's management of EWS California and SSI, breach of the mutual agreement, and claiming that Powell had converted $150,000 in funds from EWS California (the EWS California funds). The Sturgeon parties subsequently filed an amended cross-complaint and Powell filed an amended complaint.

On December 2, 2019, the case proceeded to trial.

On March 1, 2023, after significant proceedings not herein relevant, the parties reached a settlement agreement. The settlement agreement, which had to be enforced by

---

he performed no work on Powell's family law case. Evidence furnished by Powell in support of his assertion shows that he was represented by Thomas V. DeNatale, Jr., of Klein DeNatale Goldner Cooper Rosenlieb and Kimball.

order of the court, contains a complete release of all pending causes of action between Powell and the Sturgeon parties, as well as all prior verdicts.[3]

### *The Criminal Prosecution Against Powell*

On May 3, 2017, the Kern County District Attorney's Office charged Powell with grand theft related to the EWS California funds. At the prosecutor's request, Belden testified at Powell's preliminary hearing, while Sturgeon testified at Powell's criminal trial. Throughout the proceedings, Belden served as Sturgeon's legal counsel.

During proceedings, the prosecuting attorney informed the court that he had received emails from Sturgeon and Belden, leading him to believe they had been communicating or listening to the audio stream of court proceedings. The prosecutor had instructed the witnesses not to discuss their testimony. Upon further inquiry, Belden denied listening to the audio stream of Powell's trial but stated that Sturgeon and Sturgeon's son had related information to him about portions of the witnesses' testimony. Belden explained that as counsel for one of the victims, he had emailed the prosecutor suggesting that a former EWS California employee might be able to provide clarifying information about another witness's testimony. The trial court denied a motion for mistrial made by Powell's attorney, finding that Powell had not suffered prejudice as a result of Belden's conduct.

On February 17, 2022, a jury found Powell not guilty.

### *The Instant Civil Action*

On June 26, 2023, four days after the parties' settlement agreement was enforced by court order, plaintiffs filed a civil complaint against defendants, seeking damages for

---

[3] Defendants' opening brief details numerous instances in which they represented the Sturgeon parties in litigation, including in matters adverse to plaintiffs. We have omitted details of these lawsuits from our statement of facts. We accept defendants' assertion that plaintiffs never sought to disqualify defendants from representing the Sturgeon parties in litigation, and that defendants represented parties adverse to plaintiffs. Powell admits as much in his pleadings.

intentional and negligent infliction of emotional distress, abuse of process, breach of fiduciary duty, and professional negligence. Plaintiffs alleged that defendants "at all times relevant to th[e] complaint [were] in an attorney client relationship" with them, while simultaneously representing the Sturgeon parties—a party who had opposed the plaintiffs in multiple civil actions.

On September 15, 2023, defendants filed their anti-SLAPP motion. Plaintiffs filed an opposition, and the parties subsequently appeared for argument on the motion.

On January 30, 2024, the defendants' motion was denied.[4]

## DISCUSSION

### I. Breach of Fiduciary Duty (Fourth Cause of Action) and Legal Malpractice (Fifth Cause of Action)

Defendants contend that the trial court erred in finding that the claims alleged in plaintiffs' complaint were not protected activities for purposes of the anti-SLAPP statute. According to defendants, the trial court specifically erred in finding that because there was a factual dispute concerning whether an attorney-client relationship existed between them and Powell, defendants' anti-SLAPP motion must be denied. We are not persuaded.

#### A. Anti-SLAPP Motions/Standard of Review

"A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has

---

[4] We do not recite the trial court's rationale for its ruling. "[A]ppellate review is not concerned with the trial court's reasoning but only with whether the result was correct or incorrect." (*Kaldenbach v. Mutual of Omaha Life Ins. Co.* (2009) 178 Cal.App.4th 830, 843.)

established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

In evaluating an anti-SLAPP motion brought under section 425.16, the trial court engages in a two-step analysis. First, the court determines whether the moving party has shown that the challenged cause of action arises from a protected activity. (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 645 (*Thomas*).) A "protected activity" means an act in "furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).)

If the defendant carries their burden of demonstrating that the challenged cause of action arises from a protected activity, then the burden shifts to the plaintiff to demonstrate that their claims have at least minimal merit. (See *Thomas*, *supra*, 126 Cal.App.4th at p. 645.) A plaintiff does this by presenting evidence that establishes a prima facie case for his claim, meaning the challenged claim is legally sufficient and factually substantiated. (*Id*. at p. 662.) "The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*).) "Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

"Review of an order granting or denying a motion to strike under section 425.16 is de novo." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3; see *Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388, 1396 ["Whether section 425.16 applies and whether the plaintiff has shown a probability of prevailing are both legal questions which we review independently on appeal"].) "We

6.

therefore engage in the same two-step process that the trial court undertakes in assessing an anti-SLAPP motion." (*Weeden v. Hoffman* (2021) 70 Cal.App.5th 269, 282.)

**B.      Whether Plaintiffs' Claims Arise from a Protected Activity**

We begin our analysis by addressing whether plaintiffs' claims arise from a protected activity. "The sole inquiry under the first prong of the anti-SLAPP statute is whether the plaintiff's claims arise from protected speech or petitioning activity. [Citation.] Our focus is on the principal thrust or gravamen of the causes of action, i.e., the allegedly wrongful and injury-producing conduct that provides the foundation for the claims. [Citations.] We review the parties' pleadings, declarations, and other supporting documents at this stage of the analysis only 'to determine what conduct is actually being challenged, not to determine whether the conduct is actionable.' " (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 490-491.) "We do not consider the veracity of [the plaintiffs'] allegations in determining whether their claims arise from protected speech or petitioning activity." (*Id*. at p. 493; see *City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 371 ["The merits of [a plaintiff's] claims should play no part in the first step of the anti-SLAPP analysis"].)

In their fourth and fifth causes of action, plaintiffs here allege claims for breach of duty and legal malpractice. Although the anti-SLAPP statute affords broad protection to conduct undertaken in connection with litigation, not every claim that merely relates to such conduct falls within its scope. (See *Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537.) Generally, actions based on an attorney's breach of their professional and ethical duties are not protected by the anti-SLAPP statute.

"Although ... an attorney's 'litigation-related activities' ... constitute acts in furtherance of a person's right of petition, numerous cases have held that 'actions based on an attorney's breach of professional and ethical duties owed to a client' are generally not subject to section 425.16 'even though protected litigation activity features prominently in the factual background.' " (*Sprengel v. Zbylut* (2015) 241 Cal.App.4th

7.

140, 151 (*Sprengel*); accord, *California Back Specialists Medical Group v. Rand* (2008) 160 Cal.App.4th 1032, 1037 ["Not all attorney conduct in connection with litigation, or in the course of representing clients, is protected by section 425.16"]; *Chodos v. Cole* (2012) 210 Cal.App.4th 692, 702 [" 'when a claim [by a client against a lawyer] is based on a breach of the fiduciary duty of loyalty or negligence, it does not concern a right of petition or free speech, though those activities arose from the filing, prosecution of and statements made in the course of the client's lawsuit. The reason is that the lawsuit concerns a breach of duty that does not depend on the exercise of a constitutional right' "].)

The elements of a cause of action for breach of fiduciary duty/duty of loyalty (the fourth cause of action) are: "(1) the existence of a relationship giving rise to a [fiduciary duty/]duty of loyalty; (2) one or more breaches of that duty; and (3) damage proximately caused by that breach." (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 410; accord, *Wittenberg v. Bornstein* (2020) 50 Cal.App.5th 303, 312, fn. 7.) The elements of a legal malpractice claim, the fifth cause of action, are: " '(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence.' " (*Akhlaghpour v. Orantes* (2022) 86 Cal.App.5th 232, 254-255.)

Based upon the elements of plaintiffs' fourth and fifth causes of action, resolution of this issue necessarily depends upon plaintiffs' relationship with defendant attorneys. If Powell is a former client of defendants, he may assert a cause of action for breach of duty/legal malpractice against them without triggering the anti-SLAPP statute. If not, Powell is instead "a third party suing an attorney for petitioning activity," which, "clearly could have a chilling effect" on speech and would trigger protection of the anti-SLAPP statute. (*Kolar v. Donahue, McIntosh & Hammerton, supra*, 145 Cal.App.4th at p. 1540.)

8.

Powell claims that at all times, he was a client of T. Scott Belden and Belden's law firm, and that defendants represented him in his personal capacity and as the CEO of SSI, EWS California, and EWS Texas. But other than the assertions in his declaration, he provides no evidence to substantiate his claims.

The retainer agreement furnished by defendants states that Belden and Belden's law firm represented SSI in defending a class action lawsuit. Notably, the agreement contains no language indicating that defendants represented SSI's officers, shareholders, or Powell specifically—either in that class action or in any other legal matters. There is no evidence of an express attorney-client relationship between plaintiffs and defendants.

While Powell was the CEO of EWS California and SSI, as well as a majority shareholder in EWS California, that alone does not support the conclusion that an implied attorney-client relationship existed between Powell and defendants. Neither the co-owner of an entity nor its board members are the client of the attorney for the entity. (See *Wittenberg v. Bornstein*, *supra*, 50 Cal.App.5th at p. 310.) While "an implied attorney-client relationship may be formed between the attorney for a *corporate entity* and its individual members where … the corporate entity is owned by two 50 percent members" (*Id*. at p. 316), Powell does not allege that such circumstances existed here.

"In representing a corporation, an attorney's client is the corporate entity, not individual shareholders or directors, and the individual shareholders or directors cannot presume that corporate counsel is protecting their interests." (*La Jolla Cove Motel & Hotel Apartments, Inc. v. Superior Court* (2004) 121 Cal.App.4th 773, 784; see Cal. Rules of Prof. Conduct, rule 1.139(a) ["A lawyer employed or retained by an organization shall conform his or her representation to the concept that the client is the organization itself, acting through its duly authorized directors, officers, employees, members, shareholders, or other constituents overseeing the particular engagement"].) Consequently, "where an adversarial setting presents itself, pitting the corporation against one or more of its officers, directors or shareholders, corporate counsel may still

9.

represent the corporation against those individuals, even though he or she may have received confidential information about them in the course of representing the corporation." (*La Jolla Cove Motel & Hotel Apartments, Inc. v. Superior Court,* at p. 785.)

Nonetheless, we recognize that the resolution of plaintiffs' claim that an attorney-client relationship existed between them and defendants necessarily depends upon the resolution of disputed issues of fact. And contrary to Powell's assertion, we do not weigh the evidence or credibility supporting plaintiffs' claims in undertaking an examination of whether the first prong in an anti-SLAPP motion implicates a protected activity. (See *Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1388 ["Arguments about the merits of the claims are irrelevant to the first step of the anti-SLAPP analysis."]; *Castleman v. Sagaser*, *supra*, 216 Cal.App.4th at p. 493 ["We do not consider the veracity of [the plaintiffs'] allegations in determining whether their claims arise from protected speech or petitioning activity"]; *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 733 [it is irrelevant that the defendant might prevail on the merits of the claims where the defendant cannot meet the first prong of the analysis]; *City of Costa Mesa v. D'Alessio* Investments, LLC (2013) 214 Cal.App.4th 358, 371 ["The merits of [a plaintiff's] claims should play no part in the first step of the anti-SLAPP analysis"].)

*Sprengel* is instructive. There, the plaintiff, Jean Sprengel, co-owned a limited liability corporation, Purposeful Press, with her business partner. Sprengel's business partner subsequently retained the defendant attorneys to represent Purposeful Press in connection with a dispute that arose between the business partner and Sprengel. (*Sprengel*, *supra*, 241 Cal.App.4th at p. 144.) Sprengel filed a complaint for involuntary dissolution against both her business partner and Purposeful Press, as well as a separate lawsuit against her former business partner. The defendant attorneys represented Purposeful Press in the litigation, and further, pursued a claim against Sprengel. (*Id.* at p. 145.)

Sprengel then filed a legal malpractice action against the defendant attorneys, alleging they breached their duty of loyalty by prioritizing her former business partner's interests in the lawsuits Sprengel had filed. (*Sprengel, supra,* 241 Cal.App.4th at p. 146.) In response, the defendant attorneys filed an anti-SLAPP motion, arguing that Sprengel's claims depended on the existence of an attorney-client relationship between them, which did not exist. (*Id.* at p. 147.) The trial court denied the defendants' motion, finding that Sprengel's claims alleged breach of professional and ethical duties, which were not protected litigation activities. (*Id.* at pp. 143-144.)

The appellate court affirmed. The court explained that under the first step of an anti-SLAAP motion, the sole inquiry is whether the plaintiff's claims arise from protected speech or petitioning activity, without assessing the truth of the plaintiff's allegations or considering merits-based arguments. If the defendant demonstrates that the claims arise from protected activity, only then does the court evaluate the potential merits of the claims under the second prong. (*Sprengel, supra,* 241 Cal.App.4th at pp. 156-157.) The court further explained that whether Sprengel could establish an attorney-client relationship with the defendant attorneys pertains to the merits of her claims, rather than whether her claims arose from protected speech or petitioning activity. Thus, while Sprengel might ultimately prevail by proving that no such relationship existed, that was irrelevant to the question of whether her claims were based on protected activity.[5] (*Id.* at p. 157.)

Defendants argue that *Sprengel* is distinguishable because, as distinct from the instant case, there was a legitimate basis to claim the existence of an attorney-client

---

[5] Indeed, in *Sprengel v. Zbylut* (2019) 40 Cal.App.5th 1028, a subsequently filed appeal from the same case, Sprengel was ultimately unable to establish the existence of an attorney-client relationship between herself and the attorney defendants. The trial court sustained the defendants' motion for summary judgment, and the court affirmed on appeal. (*Id.* at pp. 1031-1032.)

relationship. While plaintiff's assertion of an implied attorney-client relationship in *Sprengel* may have been stronger than in this case, we are not persuaded that this renders *Sprengel* distinguishable.

The defendant attorneys there argued that the undisputed evidence showed they were retained solely to represent Purposeful Press, a limited liability company (LLC), and that an attorney representing an LLC does not owe professional duties to the LLC's individual members. The appellate court explained that the defendants had not cited any authority establishing that an attorney for an LLC has no obligations to its members. It further observed that, in the context of partnerships, courts apply a five-factor factual test to determine whether an attorney-client relationship exists between a partnership attorney and individual partners. Since similar considerations could apply to LLCs, a factual analysis would be necessary to determine what, if any, duties the defendants owed to the LLC's members, including Sprengel. Consequently, because the defendants had not definitively disproven the existence of an attorney-client relationship, the court found it improper to resolve that issue under the first prong of the anti-SLAPP test. (*Sprengel, supra*, 241 Cal.App.4th at p. 157, fn. 7.)

The Court of Appeal rejected a similar argument in *Yeager v. Holt* (2018) 23 Cal.App.5th 450 (*Yeager*). In *Yeager*, the plaintiffs filed a professional negligence lawsuit against Peter Holt, the Holt Law Firm, and Bethany Holt, a woman who allegedly worked with Peter Holt at the Holt Law Firm. In response, the defendants filed an anti-SLAPP motion, which included a declaration asserting that Bethany Holt had nothing to do with the Holt Law Firm. (*Id*. at pp. 454-455.) The trial court denied the defendants' anti-SLAPP motion. (*Id*. at p. 455.)

On appeal, the court held that the defendants' anti-SLAPP motion failed at the first step of the analysis because the plaintiffs' allegations did not arise from protected activity. (*Yeager, supra,* 23 Cal.App.5th at pp. 456-457.) In addressing the defendants' assertion that Bethany Holt was not connected to the law firm accused of negligence, the

12.

appellate court responded, "[a]lthough there may be sound reasons why this case will not succeed, either in whole or in part, filing an anti-SLAPP motion was not an effective way to litigate it." (*Id*. at p. 461 & fn. 7.)

Here, the principal thrust of plaintiffs' complaint with respect to the fourth and fifth causes of action is that defendants "prosecuted or participated in multiple civil actions against [plaintiffs] using the confidential information gained in their former representation of [plaintiffs] to gain advantage in the various lawsuits." In the fourth cause of action, Powell specifically alleges a claim for breach of fiduciary duty, citing California Rules of Professional Conduct, rule 1.9 ("Duties to Former Clients"). These claims plainly allege activity which is not protected under the anti-SLAPP statute. (See *Sprengel, supra*, 241 Cal.App.4th at p. 151 [" 'actions based on an attorney's breach of professional and ethical duties owed to a client' " are generally not subject to section 425.16 " 'even though protected litigation activity features prominently in the factual background' "].)

The issue of whether defendants formed an attorney-client relationship with plaintiffs, and whether they committed legal malpractice, pertains to the second step of the analysis. Specifically, whether plaintiffs can demonstrate a probability of prevailing on their claims. (See *Thomas, supra*, 126 Cal.App.4th at p. 645.) With respect to the first step, "[t]he question is what is pled—not what is proven." (*Comstock v. Aber* (2012) 212 Cal.App.4th 931, 942.)

Defendants argue that the complaint is barred by the litigation privilege, the statute of limitations, a settlement agreement which includes a release of all claims between the parties, and claim that they owed no duty of care to the plaintiffs.[6] However, because we

---

[6] "The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged. This privilege is absolute in nature, applying 'to *all* publications, irrespective of their maliciousness.' [Citation.] 'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or

13.

conclude that plaintiffs' claims do not arise from protected speech or petitioning activity, we need not address these additional arguments, which go to the merits of the claims rather than the threshold issue under the first prong of the anti-SLAPP analysis. (See *Hunter v. CBS Broadcasting, Inc.* (2013) 221 Cal.App.4th 1510, 1519 [" 'if the defendant does not meet its burden on the first step, the court should deny the motion and need not address the second step' "].)

Based on the foregoing, we conclude that the trial court did not err in denying defendants' anti-SLAPP motion as to the fourth and fifth causes of action, which allege breach of fiduciary duty and legal malpractice.

## II. Negligent and Intentional Infliction of Emotional Distress (First and Second Causes of Action)

From the complaint, it is difficult to ascertain whether plaintiffs' causes of action for negligent and intentional infliction of emotional distress arose from defendants' alleged legal malpractice/breach of their fiduciary duty, or from something else. The trial court treated all claims as arising out of defendants' alleged breach of their attorney-client relationship with plaintiffs. However, as our Supreme Court has explained, "an anti-SLAPP motion, like a conventional motion to strike, may be used to attack parts of a count as pleaded." (*Baral, supra,* 1 Cal.5th at p. 393.)

It is defendant's burden to identify "all allegations of protected activity, and the claims for relief supported by them." (*Baral, supra,* 1 Cal.5th at p. 396.) "This is crucial because complaints frequently include claims arising from protected activity alongside claims arising from unprotected activity, as well as 'so-called "mixed cause[s] of action" that combine[ ] allegations of activity protected by the statute with allegations of

---

other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' " (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.)

unprotected activity.' " (*Park v. Nazari* (2023) 93 Cal.App.5th 1099, 1107, quoting *Baral*, at p. 381.)

Because defendants' appellate brief does not argue otherwise, and in light of our conclusion in part I, *ante*, we conclude that the anti-SLAPP motion was properly denied as to counts 1 and 2. (See *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1011 ["If a cause of action contains multiple claims and a moving party fails to identify how the speech or conduct underlying some of those claims is protected activity, it will not carry its first-step burden as to those claims"].) While there may be other grounds on which these claims ultimately fail, defendants have not demonstrated that these claims should fail under the anti-SLAAP statute.

## III.    Abuse of Process (Third Cause of Action)

As distinct from plaintiffs' remaining allegations, count 3 is not a "garden-variety" legal malpractice claim. In count 3, defendants allege that Belden committed abuse of process by attempting to interfere with the criminal proceedings against Powell for purposes of seeking retribution against him for having prevailed in a prior civil proceeding, and to gain an advantage against Powell in a collateral civil proceeding. We conclude that this count should have been stricken under the anti-SLAPP statute.

### A.    Abuse of Process

"The common law tort of abuse of process arises when one uses the court's process for a purpose other than that for which the process was designed. [Citations.] It has been 'interpreted broadly to encompass the entire range of "procedures" incident to litigation.' " (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056-1057.) Abuse of process claims are generally subject to a special motion to strike. (See *Booker v. Rountree* (2007) 155 Cal.App.4th 1366, 1370 ["it is hard to imagine an abuse of process claim that would not fall under the protection of the [anti-SLAPP statute"].) We therefore turn to the question of whether plaintiff has demonstrated a probability of prevailing on his claim.

15.

To establish a probability of prevailing on the merits, a plaintiff need only have " 'stated and substantiated a legally sufficient claim.' " (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 63.) " 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' " (*Rusheen v. Cohen*, *supra*, 37 Cal.4th at p. 1056.)

" '[T]he plaintiff [must] establish a probability he or she will prevail on the claim at trial, i.e., to proffer a prima facie showing of facts supporting a judgment in the plaintiff's favor.' [Citation.] In assessing the probability of prevailing, a court looks to the evidence that would be presented at trial, similar to reviewing a motion for summary judgment; a plaintiff cannot simply rely on its pleadings, even if verified, but must adduce competent, admissible evidence." (*Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604, 613-614.) In making this determination, "we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' " (*Soukup v. Law Offices of Herbert Hafif*, *supra*, 39 Cal.4th at p. 269, fn. 3.)

## B.     Analysis

"To establish a cause of action for abuse of process, a plaintiff must plead two essential elements: that the defendant (1) entertained an ulterior motive in using the process and (2) committed a willful act in a wrongful manner." (*Coleman v. Gulf Ins. Group* (1986) 41 Cal.3d 782, 792.)

Here, Powell contends that Belden (1) eavesdropped on courtroom proceedings; (2) attempted to manipulate the testimony of eyewitnesses; and (3) disobeyed a directive from the prosecutor not to discuss their testimony. According to Powell, Belden acted for purposes of seeking retribution against him for prevailing in a prior proceeding, and to

16.

obtain an advantage in a collateral civil proceeding.[7] We conclude that Powell's abuse of process claim lacks the minimal merit necessary to avoid dismissal under the anti-SLAPP statute.

Although we must assume the truth of a plaintiff's allegations (see *Soukup v. Law Offices of Herbert Hafif*, *supra*, 39 Cal.4th at p. 269, fn. 3.), the allegations here are legally insufficient. For example, Powell does not allege that Belden's discussions with the eyewitnesses influenced or altered their testimony, or that Belden's conduct conferred any concrete advantage to defendants. (See *Wittenberg v. Bornstein*, *supra*, 50 Cal.App.5th 303 [concluding that the plaintiff's failure to show harm by the defendants alleged misconduct, in part, justified the dismissal of the plaintiff's claim under the anti-SLAPP statute.) Indeed, Powell asserts that Belden's conduct effectively amounted to criminal activity, but he offers no meaningful analysis or explanation as to how the conduct alleged satisfies the elements of the offenses alleged.

More importantly, Powell provides no evidence, beyond the bare allegations in his complaint, to support his claims pertaining to Belden's misconduct. Powell's declaration, submitted in support of his opposition to the defendants' anti-SLAPP motion, makes no mention of Belden's alleged actions during the criminal proceedings against Powell. "[A] plaintiff cannot simply rely on its pleadings, even if verified, but must adduce competent, admissible evidence." (*Roberts v. Los Angeles County Bar Assn.*, *supra*, 105 Cal.App.4th at p. 614.) Because Powell has failed to adduce any evidence to substantiate his abuse of process claim, we conclude that the claim lacks the minimal merit required

---

   [7] In his opposition to the defendants' anti-SLAPP motion, Powell claimed that he received a $5,000,000 verdict against Sturgeon. Evidence attached to the parties' pleadings show that the jury found that Powell suffered damages in the amount of $5,500,000 because of Sturgeon's breach of the Mutual Agreement. However, a declaration submitted by Belden clarifies that because the jury hung on several causes of action in that civil proceeding, "no judgment was ever entered on the verdicts that were returned." Powell's claim that Belden acted with an ulterior motive is specious.

to survive defendants' anti-SLAPP motion.  We will therefore strike count three of the complaint.

## **DISPOSITION**

The order denying defendants' motion to strike is reversed as to count 3 but affirmed as to all other counts.  The parties shall bear their own costs on appeal. (*Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1267.)


SMITH, J.

WE CONCUR:


LEVY, Acting P. J.


FRANSON, J.