Filed 4/26/22  Burunsuzyan v. Roger CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARO BURUNSUZYAN, | B313917 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 19STCV08621) |
| v. | |
| DIMITRI ROGER, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, David Sotelo, Judge.  Affirmed.

Revolve Law Group and Kimberly A. Wright for Defendant and Appellant.

Law Offices of Robert E. Weiss and Cris A. Klingerman for Plaintiff and Respondent.

_____

Dimitri Roger appeals from an order denying his motion to set aside the default judgment entered in favor of plaintiff Maro Burunsuzyan. Burunsuzyan sued Roger for invasion of privacy by public disclosure of private facts, invasion of privacy by false light portrayal, intentional infliction of emotional distress, and negligence, arising from an alleged incident in which Roger posted Burunsuzyan's personal cell phone number to Roger's social media account with directions for Roger's followers to call Roger at that number. Burunsuzyan filed suit after allegedly receiving over 500 text messages and numerous calls, preventing her from using her cell phone. After Roger failed to file an answer, the clerk entered a default, and the trial court entered a default judgment in favor of Burunsuzyan.

Roger moved to set aside the default judgment under the court's equitable powers, arguing he did not receive actual notice of Burunsuzyan's lawsuit until about four months after entry of the default judgment, after which he acted expeditiously to set it aside. The trial court rejected Roger's argument he was not on notice of the lawsuit, and it denied Roger's motion for relief from the default judgment, finding based on the process server's declaration and video evidence that Roger deliberately avoided service of the summons and complaint.

On appeal, Roger contends the trial court abused its discretion in denying his motion for equitable relief. Roger also argues the default judgment against him is void because he was not personally served with an adequate statement of damages. Roger also asserts for the first time o fffffffn appeal substantial evidence does not support the damages awarded because Burunsuzyan did not declare the statements she made in her

default prove-up declaration were true under penalty of perjury. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *The Complaint and Entry of the Default and Default Judgment*

On March 13, 2019 Burunsuzyan filed a complaint against Roger alleging causes of action for invasion of privacy by public disclosure of private facts, invasion of privacy by false light portrayal, intentional infliction of emotional distress, and negligence.  The complaint alleged Roger is "an extremely popular musician and performer" known as "'Rich The Kid,'" with several million followers on his social media accounts.

The complaint further alleged Roger and the Arman Yurdumyan Trust (the Trust) entered into a written agreement on July 11, 2018, under which the Trust leased to Roger real property in Los Angeles (the property) for a six-month period. Burunsuzyan, who is an attorney, acted as a representative of the Trust with respect to the property.  Roger vacated the property on January 17, 2019, but he failed to pay the final month of rent and to deliver the property to the Trust in the same condition as when Roger first leased it.  As a result, on January 15, 2019 Haikuhe Chichyan, as trustee for the Trust, filed a complaint against Roger alleging a cause of action for breach of contract.

On February 14, 2019 Burunsuzyan received a text message from the real estate broker responsible for marketing the property.  The broker stated Roger wanted to speak with Burunsuzyan, and the broker requested permission to share Burunsuzyan's personal cell phone number with Roger.

Burunsuzyan agreed.  On the same day Roger called Burunsuzyan on her personal cell phone.  Roger asked Burunsuzyan, "'You suing me?'"  Burunsuzyan began to explain the bases for Chichyan's lawsuit against Roger, but Roger hung up while she was speaking.  Later that day Roger sent Burunsuzyan a text message reading, "'Hey Gm.'"  Burunsuzyan responded by text message, "'Hey how would you like to handle the past due rent and utilities and damage to my house, my inability to rent because of the repairs that are still getting done and attorney fees and costs[?]'"  Roger responded that he did not have money to pay.  Burunsuzyan wrote, "'Then we are done communicating.'"  Roger responded, "'oh really?'"

Later on February 14 Roger posted a message to one of his social media accounts reading, "'Valentines calls me,'" followed by Burunsuzyan's personal cell phone number.  Thereafter, Burunsuzyan "suddenly began to receive a barrage of telephone calls and text messages on her personal cell phone, all of which were callers seeking to speak with 'Rich The Kid.'"  Burunsuzyan received over 500 text messages that day, and she received so many calls that she could not use her phone to make personal or professional calls.  Burunsuzyan continued "[f]or a period of time" to receive calls and text messages, rendering her "wholly unable to answer a single telephone call on her personal cell phone."  The incoming calls and text messages interfered with Burunsuzyan's ability to conduct business and to maintain contact with clients, colleagues, friends, and family.  Burunsuzyan alleged she continues to receive calls and text messages directed to Rich The Kid "at all hours of the day and night on her personal cell phone."  The complaint prayed for damages "subject to proof."

On the same day Burunsuzyan filed the complaint (March 13, 2019), she filed a statement of damages stating she incurred economic damages totaling $100,000 and non-economic damages totaling $500,000. On March 27 Burunsuzyan filed a proof of service of summons signed by Brian Weller, a registered California process server, who attested he personally served Roger with the summons, complaint, and statement of damages at 3:30 p.m. on March 20, 2019 at a specified address in Calabasas.

On May 29, 2019 Burunsuzyan filed a request for entry of default, which the clerk entered the same day. On January 21, 2020 Burunsuzyan filed a request for entry of default judgment seeking $600,000 in damages, plus costs. Burunsuzyan submitted her declaration in support of the request, but the declaration did not declare her statements were made under penalty of perjury. Burunsuzyan averred in her declaration that the incoming calls and text messages caused by Roger's conduct rendered her cell phone "completely debilitated for several days." Burunsuzyan could not use her phone to reach her two teenage sons, disrupting her family life and causing her anxiety and emotional distress. Further, Burunsuzyan used her personal cell phone for her legal practice and likely missed professional calls, including referrals for new clients. Unless Burunsuzyan turned off her phone at night, she could not sleep due to "calls and texts . . . coming in 'around the clock.'" However, turning her phone off in the evening made Burunsuzyan "concerned about . . . [her] elderly parents being able to reach [her] in the middle of the night." Burunsuzyan answered some of the calls and was "often confronted with profanity and aggressive taunting and accusations" when she explained to the callers that the phone

5

number did not belong to Roger. Further, many of the text messages Burunsuzyan received attached obscene photographs or videos depicting male and female genitalia, which upset Burunsuzyan. Burunsuzyan attached copies of numerous text messages she had received, identifying them as a "small sampling" of the total messages. (Italics and underlining omitted.)

In support of her request for default judgment, Burunsuzyan also filed a second statement of damages, this time using Judicial Council form CIV-050 (form CIV-050), which she served by mail on Roger at the Calabasas address. The form stated Burunsuzyan sought non-economic damages of $250,000 for pain, suffering, and inconvenience; $250,000 for emotional distress; and $100,000 in economic damages for loss of business opportunities.

On March 4, 2020 the trial court entered a default judgment against Roger in the amount of $601,235.15, including $600,000 in damages, plus costs. In a minute order entered on the same day, the court found Burunsuzyan had "provided sufficient evidence to support the judgment sought."

B.    *Roger's Motion To Set Aside the Default Judgment*

On December 2, 2020 Roger filed a motion to set aside the default judgment pursuant to the court's inherent equitable powers for lack of actual notice.[1] Roger requested leave to file an

---

[1]    Roger also sought relief under Code of Civil Procedure section 473.5, but he has abandoned this basis for relief on appeal. Further undesignated statutory references are to the Code of Civil Procedure.

answer to the complaint and "to defend the action."[2]  Roger asserted he was in New York on March 20, 2019 when he was purportedly served in Calabasas according to the proof of service of the summons and complaint.  In his declaration filed in support of the motion, Jean Roger, Roger's father, averred he lived with Roger at the Calabasas address in March 2019.  At 3:30 p.m. on March 20 Jean was home but Roger had traveled to New York.  Jean averred the process server left "various documents relating to this case" with Jean without explaining their legal significance.  Jean did not understand what the documents were and discarded them, believing them to be "'junk'" mail sent to Roger relating to the music industry.

Roger stated in his declaration in support of the motion that he was not personally served with the summons or complaint.  Rather, he was in New York from March 20 through 27, 2019 to shoot a music video for one of his songs.  Roger believed his father was served with the documents but never gave them to Roger.  Roger "discovered the default judgment in approximately October 2020, after [his] attorney did a docket search for another matter."  He then "acted immediately and retained counsel the same day to move to set aside the default judgment."  Roger attached to his declaration a copy of an invoice from a New York hotel showing a reservation in Roger's name from March 20 through 27, 2019, and copies of images that Roger averred had been taken of him and posted online to his social media account while he was in New York during this period.

---

[2]     Although Roger's motion did not expressly seek to set aside the default, we treat Roger's request for leave to defend the action as a request for relief from the default.

7

Burunsuzyan opposed Roger's motion, arguing Roger had been personally served, and to the extent Roger lacked actual notice of the lawsuit, it was due to his avoidance of service and inexcusable neglect. Burunsuzyan asserted Roger's hotel invoice only showed that Roger had booked a room in New York, not that he was there on March 20, 2019, and Burunsuzyan pointed to the absence of evidence of an airline itinerary, business records, or ground transportation relating to Roger's asserted trip to New York.

In his declaration, Weller described his efforts to serve Roger. Weller was aware of Roger's physical appearance from Roger's "strong online presence, with many pictures and videos existing on social media and other websites." After determining Roger resided at an address in Calabasas, Weller made several attempts at service. On February 21, 2019 an older man answered the door and nervously told Weller that Roger did not live there. However, Weller saw several luxury vehicles parked outside the residence, which Weller recognized from Roger's social media posts. On March 3, 2019 a young woman at the Calabasas residence told Weller that Roger would be gone for three weeks.

At 3:00 p.m. on March 20, 2019 Weller returned to the Calabasas residence. He again saw luxury vehicles he believed to belong to Roger parked outside. The woman who answered the front door told Weller that Roger was not there, but through the door Weller noticed several people inside, one of whom he believed was Roger. Weller told the woman he was a process server with court documents for Roger. Weller returned to his car to wait before making a further attempt.

A half hour later, as Weller again approached the residence, Roger exited from the front door. Weller announced he was a process server with court documents for Roger, and "[a]t that point [Weller] then turned on [his] cell phone video record[er]." Roger did not stop to allow Weller to hand him the envelopes containing the documents, and instead "continued to walk down the driveway towards his vehicle in an apparent attempt to avoid service." Weller stated, "'Here you go Dimitri. Thank you.'" Then Weller dropped the two service envelopes (one for this case and another for Chichyan's suit against Roger) at Roger's feet. Roger continued to walk away. Weller returned to his car. As he drove away from the property, he heard Roger say, "'If I ever see you around here again, I'm gonna whoop your ass.'" Weller hurried away. Weller attached to his declaration still images from the video he recorded, which show a manila envelope and a young Black man walking to the street.

In the video,[3] the man holding the camera phone can be heard off-screen saying, "'Hey Dimitri?'" A second man responds, but that answer cannot be discerned from the recording. The first man then states, "'Here you go Dimitri,'" and a hand can be

---

[3] The record does not reflect whether Burunsuzyan lodged a copy of the video with the trial court in this case or served it on Roger's attorneys. However, it is clear all parties and the court reviewed a copy of the video in connection with Roger's motion to set aside the default judgment, and the video was lodged with the court and served on all parties in the related case against Roger. As Roger's attorney states in her declaration, "I have now seen the alleged video of service numerous times." Similarly, the court in its April 27 ruling discusses the video, noting "this Court is asked to determine whether that video shows Roger being served with a copy of the summons and complaint."

seen dropping two manila envelopes on a paved driveway. The camera pans up to show a young Black man on foot exiting a driveway toward the street. The young man appears to see the envelopes being dropped but continues to walk away. The first man then says, "'Thank you,'" and he walks away.

In his reply, Roger argued the video showed that Weller did not identify himself as a process server with court documents before dropping the documents on the ground in front of Roger. Further, the video showed the young Black man had "an *extremely* confused look on his face, and appears to be somewhat uneasy, uncomfortable, and apprehensive about [the] man running up and recording him," and therefore Roger did not understand who Weller was or the purpose of the documents.

On April 27, 2021 the trial court denied Roger's motion. The court found the video corroborated Weller's declaration, reasoning, "The man in the video appears identical to the publicly available pictures of Roger. While the video is undated, Roger cannot provide his flight information to confirm—as he has always asserted—that he was not at the residence on the day in question." The court found "Weller identified himself as a process server with legal documents and that Roger knowingly refused to accept them and walked away. . . . [¶] . . . Roger purposefully refused to be served and is not entitled to have the default judgment set aside."

Roger timely appealed.

## DISCUSSION

A.    *The Trial Court Did Not Abuse Its Discretion in Denying Roger's Motion To Set Aside the Default Judgment on Equitable Grounds*

1.    *Applicable law and standard of review*

"[A] trial court may . . . vacate a default on equitable grounds even if statutory relief is unavailable." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981, 985 [granting equitable relief from default judgment due to defendants' failure to pay full filing fee for answer based on incorrect information from clerk's office]; accord, *Luxury Asset Lending, LLC v. Philadelphia Television Network, Inc.* (2020) 56 Cal.App.5th 894, 910 (*Luxury Asset*).) "One ground for equitable relief is extrinsic mistake—a term broadly applied when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits.  [Citations.] 'Extrinsic mistake is found when [among other things] . . . a mistake led a court to do what it never intended . . . .'" (*Rappleyea*, at p. 981; accord, *Mechling v. Asbestos Defendants* (2018) 29 Cal.App.5th 1241, 1246.)  "To qualify for equitable relief based on extrinsic mistake, the defendant must demonstrate: (1) 'a meritorious case'; (2) 'a satisfactory excuse for not presenting a defense to the original action'; and (3) 'diligence in seeking to set aside the default once the fraud [or mistake] had been discovered.'" (*Mechling*, at p. 1246; accord, *Rappleyea*, at p. 982.)

"We review a challenge to a trial court's order denying a motion to vacate a default on equitable grounds . . . for an abuse of discretion." (*Rappleyea v. Campbell, supra*, 8 Cal.4th at p. 981; accord, *Mechling v. Asbestos Defendants, supra*, 29 Cal.App.5th at p. 1246.)  "We defer to the trial court's determination of

11

credibility and do not reweigh evidence or reassess the credibility of witnesses." (*Behm v. Clear View Technologies* (2015) 241 Cal.App.4th 1, 15 (*Behm*); accord, *Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 622.) "If the evidence gives rise to reasonable conflicting inferences, one of which supports the trial court's determination, we will affirm the court's finding on appeal." (*Behm*, at p. 15; accord, *Johnson*, at p. 623.) "When a default *judgment* has been obtained, equitable relief may be given only in exceptional circumstances." (*Rappleyea*, at p. 981; accord, *Luxury Asset, supra*, 56 Cal.App.5th at p. 910.)

>    2.    *Roger failed to present a satisfactory excuse for not presenting a defense to Burunsuzyan's action*

Roger contends the trial court abused its discretion in denying his request for equitable relief because, as Roger stated in his declaration, he was not aware of the lawsuit until October 2020. The trial court did not abuse its discretion. In denying Roger's motion, the court found Weller (through his declaration) was credible, and Roger and his father (through their declarations) were not. As the court explained, the man shown in the video "appears identical to the publicly available pictures of Roger," and Roger did not present any flight information to confirm he was in New York on the day of the asserted service. As the reviewing court we do not reweigh the evidence and must instead defer to the trier of fact's express or implied findings where those findings are supported by substantial evidence. (*Behm, supra*, 241 Cal.App.4th at p. 15; *Johnson v. Pratt & Whitney Canada, Inc., supra*, 28 Cal.App.4th at p. 622.)

12

Substantial evidence supports the trial court's findings. Roger does not contend he is not the person seen in the video.[4] Rather, he notes the video does not depict Weller notifying Roger he is a process server with court papers, arguing "Roger's public figure status, coupled with a stranger approaching with unidentified papers, may [have led] Roger to not be fully aware of the legal importance of the encounter, or that he was being served, providing a satisfactory excuse for his failure to respond." Roger's contention is not persuasive because he initially averred in his declaration he could not have been personally served on March 20, 2019 because he was in New York, but once faced with a video showing him avoiding service, he changed his story. As the trial court found, based on the video and Weller's declaration, "Weller identified himself as a process server with legal documents and . . . Roger knowingly refused to accept them and walked away." The court therefore resolved the conflict in the evidence against Roger, expressly crediting Weller's declaration that he announced he was a process server with court documents for Roger before he began to record the service with his cell phone camera.

Given the trial court's finding Roger lacked notice only because he intentionally avoided service, the court did not abuse its discretion in denying equitable relief. "[E]xtrinsic fraud and extrinsic mistake are unavailable when a party's own negligence allows the fraud or mistake to occur." (*Kramer v. Traditional Escrow, Inc.* (2020) 56 Cal.App.5th 13, 29, 31 [reversing grant of

---

[4] The record before the trial court included multiple still images of Roger, which Roger submitted in support of his motion to set aside the default judgment to show he was in New York at the time Weller claimed to have served Roger.

13

motion to set aside default judgment where "any lack of actual notice was due to [defendants'] own negligence" in failing to apprise plaintiff and the court of correct address for service]; accord, *In re Marriage of Park* (1980) 27 Cal.3d 337, 345 ["a motion to vacate a judgment should not be granted where it is shown that the party requesting equitable relief has been guilty of inexcusable neglect"]; see *Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 503 ["Relief on the ground of extrinsic fraud or mistake is not available to a party if that party has been given notice of an action yet fails to appear, without having been prevented from participating in the action."].)

Roger urges us in the alternative to grant equitable relief from the default judgment on appeal despite the trial court's denial of relief, relying on *Luxury Asset, supra*, 56 Cal.App.5th 894. But *Luxury Asset* does not stand for the proposition, as argued by Roger, that a reviewing court "may . . . assess witness credibility and resolve conflicts in evidence." We cannot. Contrary to Roger's contention, the *Luxury Asset* court reversed the trial court's denial of the defendant's motion for equitable relief from a default and default judgment on the basis the trial court had abused its discretion in determining the defendant failed to show diligence in seeking relief notwithstanding the *undisputed* evidence showing diligence. (*Id.* at pp. 911, 913-914.) And there was no dispute (in the trial court or on appeal) that the corporate defendant had presented a satisfactory excuse for not presenting a defense to the complaint, where the plaintiffs served a shareholder they knew was not trustworthy on behalf of the corporate defendant, and the shareholder failed to inform his fellow shareholders that the company needed to respond. (*Id.* at

14

pp. 912-913.)  Here, it was the proper role of the trial court to resolve the conflicting evidence before it.

B.    *The Default Judgment Is Not Void on Its Face for Lack of Personal Service on Roger of an Adequate Statement of Damages*

1.    *Roger's challenge to the default judgment as void is timely*

For the first time on appeal, Roger contends the default judgment is void on its face because he was not personally served with an adequately detailed statement of damages under section 425.11.  Section 425.11 requires a plaintiff in an action to recover damages for personal injury or wrongful death to serve the defendant with "a statement [of damages] setting forth the nature and amount of damages being sought" before a default may be taken.  (§ 425.11, subds. (b) & (c); see *Dhawan v. Biring* (2015) 241 Cal.App.4th 963, 968-969.)  Burunsuzyan argues we lack jurisdiction to review the merits of Roger's claim because Roger did not appeal the default judgment, and any challenge to the default judgment is therefore untimely.  Roger's challenge is timely.

If a court "lack[s] fundamental authority over the subject matter, question presented, or party, . . . its judgment [is] void." (*In re Marriage of Goddard* (2004) 33 Cal.4th 49, 56; accord, *Ramos v. Homeward Residential, Inc.* (2014) 223 Cal.App.4th 1434, 1442 [default and default judgment void for lack of proper service on corporate agent]; *Carr v. Kamins* (2007) 151 Cal.App.4th 929, 933 [default judgment void for ineffective service by publication]; see § 473, subd. (d) [a trial court "may . . . set aside any void judgment or order"].)  "'[Q]uestions of

15

jurisdiction are never waived and may be raised for the first time on appeal.'" (*Grados v. Shiau* (2021) 63 Cal.App.5th 1042, 1050; accord, *Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 830-831 & fn. 18 [trial court erred in denying motion to set aside default judgment because judgment was void on its face due to lack of allegations of or prayer for damages against defendant, despite defendant's failure in trial court to assert judgment was void].) Further, "[t]here is no time limit to attack a judgment void on its face." (*Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1021 [trial court had jurisdiction to consider plaintiff's motion to vacate order declaring him a vexatious litigant although he filed the motion nearly five years after entry of the order and after plaintiff voluntarily dismissed the action, where plaintiff argued trial court lacked jurisdiction to enter order and jurisdictional facts were ascertainable from the record]; accord, *OC Interior Services, LLC v. Nationstar Mortgage, LLC* (2017) 7 Cal.App.5th 1318, 1327 ["A judgment that is void on the face of the record is subject to either direct or collateral attack at any time."].)

Therefore, although Roger failed to argue in the trial court that the default judgment was void on its face, the argument is properly before us on appeal from the denial of his motion to set aside the default judgment.

2.  *The default judgment is not void*

Roger contends the March 13, 2019 statement of damages personally served on him with the complaint "does not comport with due process principles because it [did] not give Roger actual notice of his potential liability so as to make a 'fair and informed' decision on how to proceed." Roger asserts the operative

16

statement of damages "merely lists [Burunsuzyan's] *total* general damages and her *total* special damages," and further, it did not provide adequate notice because it was not on mandatory form CIV-050.[5] Neither contention has merit.

A judgment or order "is considered void on its face only when the invalidity is apparent from an inspection of the judgment roll or court record without consideration of extrinsic evidence." (*Pittman v. Beck Park Apartments Ltd., supra*, 20 Cal.App.5th at p. 1021; accord, *OC Interior Services, LLC v. Nationstar Mortgage, LLC, supra*, 7 Cal.App.5th at p. 1328.)

"Procedural due process requires '"that a defendant be given notice of the existence of a lawsuit and notice of the specific relief which is sought . . . .  The logic underlying this principle is simple: a defendant who has been served with a lawsuit has the right, in view of the relief which the complainant is seeking from him, to decide not to appear and defend.  However, a defendant is not in a position to make such a decision if he or she has not been given full notice."'" (*Yu v. Liberty Surplus Ins. Corp.* (2018) 30 Cal.App.5th 1024, 1031; accord, *Greenup v. Rodman* (1986) 42 Cal.3d 822, 826 (*Greenup*) [§§ 580 and 425.11 "aim to ensure that a defendant who declines to contest an action does not

---

[5] We agree with Roger that Burunsuzyan's statement of damages on form CIV-050, which Burunsuzyan served by mail on Roger and filed with the court in support of her request for default judgment, does not comport with the requirement under section 425.11, subdivision (d)(1), that "[i]f a party has not appeared in the action, the statement shall be served in the same manner as a summons" (i.e., by personal service).  Further, service of the statement of damages failed to comply with section 425.11, subdivision (c), requiring the statement of damages be served on the defendant "before a default may be taken."

thereby subject himself to open-ended liability"].) Consistent with this principle, "a default judgment greater than the amount specifically demanded is void as beyond the court's jurisdiction." (*Greenup*, at p. 826; accord, *Behm, supra*, 241 Cal.App.4th at p. 13; see § 580, subd. (a) ["The relief granted to the plaintiff, if there is no answer, cannot exceed that demanded . . . in the statement [of damages] required by Section 425.11."].)

"'Section 425.11 has been construed to require "a statement of both special and general damages sought [because] . . . such information aids a defendant in evaluating the validity of plaintiff's damage claims with regard to their provability."'" (*Schwab v. Southern California Gas Co.* (2004) 114 Cal.App.4th 1308, 1322, disapproved on another ground in *Sass v. Cohen* (2020) 10 Cal.5th 861; accord, *Schwab v. Rondel Homes, Inc.* (1991) 53 Cal.3d 428, 432.)[6] Here, the statement of damages personally served on Roger satisfied this requirement by stating Burunsuzyan sought economic (special) damages totaling $100,000 and non-economic (general) damages totaling $500,000.

Roger points out that form CIV-050 requires a plaintiff to provide detail as to certain subcategories of the general and special damages sought from the defendant. For example, the

---

[6] When section 425.11 was first enacted in 1974, a plaintiff seeking a default judgment had to give notice of "the amount of general and special damages sought to be recovered." (Stats. 1974, ch. 1481, § 2.) A 1993 amendment replaced this phrase with the language of the present statute that requires the plaintiff serve a statement setting forth the nature and amount of damages being sought before a default may be taken. (Stats. 1993, ch. 456, § 2; § 425.11, subd. (c).) However, as discussed, the courts have continued to require notice of the general and special damages sought.

18

general damages section of form CIV-050 provides blank lines for a plaintiff in a personal injury action to specify the amount of damages for "[p]ain, suffering, and inconvenience"; "[e]motional distress"; "[l]oss of consortium"'; and "[o]ther." As to special damages, form CIV-050 provides blank lines for a personal-injury plaintiff to specify damages sought for "[m]edical expenses"; "[f]uture medical expenses"; "[l]oss of earnings"; "[l]oss of future earning capacity"; "[p]roperty damage"; and "[o]ther."

Roger is correct that the Judicial Council developed and approved form CIV-050 for mandatory use as a statement of damages under section 425.11. (See § 425.12, subd. (b) ["The Judicial Council shall develop and approve an official form for use as a statement of damages pursuant to Sections 425.11 and 425.115."]; Gov. Code, § 68511 ["The Judicial Council may prescribe by rule the form and content of forms used in the courts of this state. When any such form has been so prescribed by the Judicial Council, no court may use a different form which has as its aim the same function as that for which the Judicial Council's prescribed form is designed."].) But it does not follow that Burunsuzyan's failure to use form CIV-050 (or provide the level of detail it requires) means the statement of damages personally served on Roger cannot support entry of the default and default judgment, especially given the Supreme Court's direction in *Greenup, supra*, 42 Cal.3d at page 827 that the plaintiff must "'give notice to the defendant of the amount of special and general damages sought' before obtaining a default judgment." Roger cites to no authority for the proposition a plaintiff's failure to provide the defendant with the nature of damages sought at the level of detail required by form CIV-050 when personally serving a statement of damages in a personal injury case—

19

notwithstanding specification of the general and special damages sought—renders a subsequently entered default judgment void on its face for lack of jurisdiction. He has therefore forfeited this argument. (See *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 363 ["If a party's briefs do not provide legal argument and citation to authority on each point raised, "'the court may treat it as waived, and pass it without consideration.'""]; *In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 227 ["'Issues not supported by citation to legal authority are subject to forfeiture.'"].)

Although form CIV-050 would have provided Roger with additional detail as to the subcategories of special and general damages sought by Burunsuzyan, we are not persuaded the statement of damages personally served on Roger in this case failed to apprise him of the nature and amount of damages being sought or otherwise impeded his ability to make a "'fair and informed'" decision whether to defend the case. (*Greenup, supra*, 42 Cal.3d at p. 829.)

C.     *Roger Has Forfeited His Challenge to Burunsuzyan's Declaration*

For the first time on appeal Roger contends substantial evidence does not support the damages awarded in the default judgment because Burunsuzyan failed to declare the statements she made in her default prove-up declaration were true under penalty of perjury. Roger is correct that Burunsuzyan's declaration was inadmissible, but as Burunsuzyan argues, Roger failed to appeal the default judgment. Nor did he raise this argument in his motion to vacate the default judgment, which is

20

the subject of this appeal.  Thus, Roger has forfeited this contention.

Under section 585, subdivision (b), "if the complaint seeks . . . monetary relief in amounts that require additional evidence or the exercise of judgment to determine, the plaintiff must request entry of judgment by the court."  (*Holloway v. Quetel* (2015) 242 Cal.App.4th 1425, 1432; accord, *Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 287.)  "In those cases the plaintiff must affirmatively establish his or her entitlement to the specific judgment requested."  (*Holloway*, at p. 1432; accord, *Kim*, at p. 287; see § 585, subd. (b) ["The court shall hear the evidence offered by the plaintiff, and shall render judgment in the plaintiff's favor for that relief, not exceeding the amount stated . . . in the statement required by Section 425.11 . . . , as appears by the evidence to be just."].)

A party seeking a default judgment must submit, among other documents, "[d]eclarations or other admissible evidence in support of the judgment requested."  (Cal. Rules of Court, rule 3.1800(a)(2); accord, *Holloway v. Quetel, supra*, 242 Cal.App.4th at p. 1432; see § 585, subdivision (d) [authorizing trial court to "permit the use of affidavits, in lieu of personal testimony, as to all or any part of the evidence or proof required or permitted to be offered, received, or heard" on a plaintiff's request for default judgment].)  "The facts stated in the affidavit or affidavits shall be within the personal knowledge of the affiant and shall be set forth with particularity, and each affidavit shall show affirmatively that the affiant, if sworn as a witness, can testify competently thereto."  (§ 585, subd. (d).)

Further, section 2015.5 requires that a declaration or affidavit recite that "it is certified or declared by him or her to be

21

true under penalty of perjury," and if executed in California, state the date and place of execution. (See *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 941 ["To qualify as an alternative to an affidavit, a declaration must be signed and recite that the person making it certifies it to be true under penalty of perjury."]; *Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 610.) An unsworn declaration that fails to comply with section 2015.5 is inadmissible hearsay. (*Kulshrestha*, at pp. 608-609, 612; *ViaView, Inc. v. Retzlaff* (2016) 1 Cal.App.5th 198, 217.)

Burunsuzyan's default prove-up declaration was inadmissible hearsay because it was not signed under penalty of perjury. Although Roger did not object to the declaration prior to entry of the default judgment, he had no right to do so. "California law does not give defaulting defendants the right to contest the amount of damages. Our authorities indicate that a defendant who defaults is 'out of court' and not entitled to participate in the prove-up hearing." (*Sass v. Cohen, supra*, 10 Cal.5th at p. 882; accord, *Harbour Vista, LLC v. HSBC Mortgage Services Inc.* (2011) 201 Cal.App.4th 1496, 1504 ["after a plaintiff has obtained a default under section 585, the defendant no longer has any right to participate in the case"].) However, in some circumstances the Courts of Appeal have allowed defaulting defendants to challenge the sufficiency of the default prove-up evidence on appeal from the default judgment. (See *Kim v. Westmoore Partners, Inc., supra*, 201 Cal.App.4th at pp. 288-289 & fn. 11 ["On appeal, defendant may challenge the sufficiency of the evidence offered to support the default judgment."]; *Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1303 [observing Courts of Appeal on

22

appeal from default judgments have allowed "an attack on appeal where the damages awarded . . . are excessive"].) This would be a very different case had Roger challenged the sufficiency of Burunsuzyan's declaration on appeal from the default judgment. But he did not. And the time for Roger to appeal the default judgment had long since passed by the time he filed his notice of appeal.[7]

We are unaware of any authority for allowing a defendant to raise a challenge to the sufficiency of the evidence supporting a default judgment for the first time on appeal from the denial of a motion to set aside a default judgment. And even if Roger could have challenged Burunsuzyan's declaration in his motion to set aside the default judgment, he failed to do so. Thus, he has forfeited the argument by not raising it in the trial court.[8] (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603 ["'issues not raised in the trial court cannot be raised for the first time on appeal'"]; *Hanna v. Mercedes–Benz USA, LLC* (2019) 36 Cal.App.5th 493, 513 ["'"As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal."'"]; see Evid. Code, § 353 ["A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] (a) There appears of record an objection to or a

---

[7]    Roger filed his notice of appeal on June 21, 2021, more than 180 days after entry of the March 4, 2020 default judgment. (See Cal. Rules of Court, rule 8.104 (a)(1)(C).)

[8]    Roger does not contend Burunsuzyan's failure to attest that the statements she made in her default prove-up declaration were true under penalty of perjury rendered the default judgment void on its face.

23

motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion."].)

## DISPOSITION

The order denying Roger's motion to set aside the default judgment is affirmed. Burunsuzyan is to recover her costs on appeal.


FEUER, J.


We concur:


PERLUSS, P. J.


SEGAL, J.